15619. HARPER *v.* ATLANTA & WEST POINT RAILROAD COMPANY.

1. Where it is recited in a bill of exceptions to the direction of a verdict that the direction was based expressly upon one issue alone, a motion to dismiss the writ of error upon the ground that the material evidence touching the other issue or issues is not brought up in full will not be sustained, when it does not affirmatively appear in the record that the complaining party is precluded upon some other issue than that upon which the verdict was directed. In such a case it is sufficient for the plaintiff in error to set out all the material evidence introduced on that issue upon which the trial judge directed the verdict against him. Even if it were otherwise, it is questionable whether the bill of exceptions should be dismissed or whether the judgment of the trial court should be affirmed.

2. A bill of exceptions complaining of the direction of a verdict upon a certain issue will not be dismissed because the bill of exceptions may disclose that not all of the evidence relating to such issue is brought up, provided it appear that all the evidence necessary to a decision of the question raised is brought up. It affirmatively appears from the bill of exceptions that certain evidence introduced in the court below, relating to the issue upon which the trial judge directed a verdict, which direction is assigned as error, has not been brought up in such a way as to enable this court to consider it; but the bill of exceptions will not for that reason be dismissed, since whatever may have been

the effect of the evidence omitted, it could not be material or relevant in the decision of the particular point raised by the assignment.

3. Where a woman was divorced in a foreign State, and it was decreed that she should not have the privilege of marrying again for sixty days after the decree, assuming that her marriage to another in that State within the period of the impedient was void and even criminal, and that under the laws of that State they never became husband and wife even after the expiration of the sixty-day period, yet when they thereafter removed into the State of Georgia and openly declared their intention to be husband and wife, and lived together as such for a number of years, during which time they were regarded by their friends and acquaintances as husband and wife, and a deed was made by the man to the woman, describing her as his wife and reciting a consideration based upon his love and affection for her as such, which deed she accepted, such conduct in this State authorized the inference of lawful wedlock between them under the laws of Georgia.

(a) In the trial of a case involving the issue as to whether such man and woman became lawfully married under the laws of Georgia, under the circumstances set out above, the trial court erred in directing a finding that no such marriage had taken place.

DECIDED DECEMBER 15, 1924.

Action for damages; from Fulton superior court—Judge E. D. Thomas. March 17, 1924.

*E. Smyth Gambrell, Underwood, Pomeroy & Haas,* for plaintiff.
*Dorsey, Brewster, Howell & Heyman,* for defendant.

BELL, J. Martha Daniel brought suit against Atlanta & West Point Railroad Company for the homicide of her alleged husband, Olin Daniel. The defendant denied that it was negligent, and, also, that the plaintiff was the widow of the deceased. The plaintiff married Harper after the filing of her suit, and the action was amended so as to proceed in her new name. Upon the trial the court directed a verdict in favor of the defendant, and the plaintiff excepted.

The following facts are recited in the bill of exceptions: The plaintiff testified that she was the wife of Olin Daniel at the time of his injury and death; she then introduced five witnesses who testified concerning the homicide of her husband, and rested. The defendant, without motion of any kind, proceeded to introduce evidence upon the issue of negligence. Upon the issue of the plaintiff's alleged widowhood the defendant "introduced the case of Attorney General *v.* Vance, 210 Ala. 9 (97 So. 230), as evidence of the Alabama law upon the matter of marriage and divorce," the same not being otherwise referred to or more fully shown in the bill

of exceptions; a decree rendered by the circuit court of Jefferson county, Alabama, on December 1, 1916, granting to the plaintiff a complete divorce from one Arthur Powell, to whom she had hitherto been married, in which decree it was "ordered and adjudged . . that said Martha Powell [the plaintiff herein] shall not again marry except to said Arthur Powell until sixty days after this date, and that if an appeal is taken within sixty days she shall not marry again except to said Arthur Powell during the pendency of said appeal;" and a certified copy of the record of the marriage in Alabama on December 12, 1916, of the plaintiff to Olin Daniel, the decedent. The plaintiff then testified in rebuttal as follows: "I was first married in Alabama to Arthur Powell, and obtained a divorce from him in the circuit court of Jefferson county, Alabama, which is at Birmingham. I do not remember the date when this divorce decree was granted, but I know that I had obtained the decree before I married Olin Daniel, who was my second husband and whom I married on December 12, 1916. I understood and believed at the time I married Olin Daniel that I was completely divorced from Arthur Powell and had an immediate right to remarry and I openly married Olin Daniel, to the knowledge of all my friends and acquaintances in Birmingham, and Olin Daniel and I immediately set up housekeeping at the home of my mother in Birmingham, where all of our mutual friends regarded us as man and wife, and I held Daniel out to be my husband, and he held me out to be his wife to the members of our own families and to people with whom we were acquainted. We were married in regular form; we obtained a license and went through with a regular marriage ceremony in good faith. He lived with me in our home as my husband and I with him as his wife, and we continued to so live in Birmingham for several months, until April, 1917, when we moved to Atlanta and set up housekeeping in a house which we bought with our joint funds. When I came to Atlanta he introduced me to his people here as his wife, and into his church and to his pastor as his wife, and we were known to all of our friends, relatives, and acquaintances in Atlanta as Olin Daniel and Martha Daniel, his wife. We lived together in Atlanta from the spring of 1917, when we moved here from Birmingham, until his death in May, 1922. During that period we were attentive to each other as man and wife and he was not attentive to any other woman, nor was I attentive

to any other man. One child was born to us during our married life. This child is dead, and there are no children of Olin Daniel or of myself now living. I never heard him say after we went through the marriage ceremony in Birmingham in December, 1916, that I was not his wife, and he always treated me as such. On December 11, 1918, he deeded to me a tract of land on Smith street in Atlanta, this being the deed." The plaintiff, as a witness, here exhibited and identified a duly executed and recorded deed from Olin Daniel to Martha Daniel, dated December 11, 1918, reciting that Olin Daniel of Fulton county, Georgia, was party of the first part, and "Martha Daniel, his wife," of the same place, was party of the second part; and that the party of the first part, in consideration of love and affection for his said wife, granted and conveyed unto her a certain described lot in the city of Atlanta. The plaintiff further testified: "When Olin Daniel and I were married on December 12, 1916, we began to live in the same house and occupy the same home, and in every sense lived as man and wife, and we so regarded each other at the time of his injury and death on May 12, 1922."

The plaintiff called the court's attention to certain decisions of the Supreme Court of Alabama, described in the bill of exceptions only by name, volume, and page, "declaring the Alabama law to recognize common-law marriages. . . The court, without objection from the opposing counsel, accepted these decisions as containing the Alabama law." The defendant thereupon asked the court to direct a verdict in its favor, "stating as the only ground for such request that the plaintiff had not shown herself to have been the legal wife of the deceased, Olin Daniel, at the time of his injury and death, nothing being said as to the sufficiency of the evidence of negligence. After a hearing of argument upon this sole point, . . the court directed a verdict in favor of the defendant, stating that said verdict was directed solely upon the question of whether or not plaintiff was the lawful wife of Daniel" at the time of his death.

None of the evidence offered by either party upon the subject of negligence is set forth; nor is there any evidence touching the value of the life of the deceased.

The defendant in error made a motion to dismiss the bill of exceptions, upon two grounds: First, because it does not set forth

the evidence of the law of Alabama "contained in the case of Attorney General *v.* Vance, [210 Ala. 9] 97 So. 230, . . but merely refers to said case," without specifying what was decided therein, leaving the determination of the actual evidence so offered to the appellate court's examination of the decision. It is alleged in this ground that the bill of exceptions and the allegations thereof show that the evidence is material to a determination of the error complained of. Second, because the bill of exceptions does not set forth the evidence offered by either party upon the material issues, in order that the appellate court may decide whether a verdict was not demanded for the defendant upon some other issue than that of the plaintiff's widowhood.

1. We will consider the grounds of the motion to dismiss in their inverse order. The second ground is clearly without merit. The verdict was directed upon a sole ground. Upon this point the case is controlled by the decision of the Supreme Court in *Lamar* v. *Gardner,* 113 *Ga.* 781 (1) (39 S. E. 498). See also *Houser* v. *Savannah Electric Co.,* 9 *Ga. App.* 766 (3) (72 S. E. 276); *Georgia &c. R. Co.* v. *Georgia-Alabama Power Co.,* 152 *Ga.* 172 (1) (108 S. E. 521).

Even if we could agree with the counsel for the defendant in error upon the propositions asserted in both grounds of the motion, it would be questionable as to whether the bill should be dismissed or merely that the judgment of the trial court should be affirmed. See *Roberts* v. *City of Cairo,* 133 *Ga.* 642 (4) (66 S. E. 938); *Jennison* v. *Jennison,* 136 *Ga.* 202 (3 *b*) (71 S. E. 244, Ann. Cas. 1912C, 441); *Hancock* v. *McNatt,* 116 *Ga.* 297 (1) (42 S. E. 525); *Williams* v. *Childers,* 145 *Ga.* 91 (88 S. E. 557); *Pierce* v. *Felts,* 146 *Ga.* 716 (92 S. E. 212); *Fairburn Banking Co.* v. *Citizens Bank,* 20 *Ga. App.* 732 (1) (93 S. E. 234).

2, 3. If it appears, by the recitals of a bill of exceptions, that not all of the evidence material to a determination of the question raised for decision has been brought up, there can be no reversal of the judgment, but if there are questions as to the correctness of the judgment which can be determined without reference to the evidence appearing to have been omitted, they may be considered. *Roberts* v. *City of Cairo,* supra. The view which we take of the second ground of the motion to dismiss really controls our decision upon the propriety of the judgment excepted to. We are of the

opinion that although the mere reference in the bill of exceptions to the decision of the Supreme Court of Alabama in the case of Attorney General *v.* Vance may not properly bring anything to our consideration as evidence of the law of that State, nothing contained therein could be material in passing upon the question of whether the court erred in directing a verdict in favor of the defendant upon the issue of the plaintiff's widowhood. That question is, would the jury have been *authorized* to find that the plaintiff and Olin Daniel were living together in a state of wedlock, according to the laws of this State, at the time of his homicide?

We may assume that the decision of the Alabama court in the Vance case would have proved that the plaintiff's marriage to Daniel within less than sixty days from the decree of divorce was absolutely void, and that she was even guilty of bigamy under the Alabama law. In the absence of evidence to the contrary, we would presume that the common law prevails in that State, but we may assume further that if the evidence had been properly set out in the bill of exceptions, or attached thereto and identified as an exhibit, it would have disclosed that the common law is not in force there, and that the marriage within the sixty-day period being void, the parties could not have become husband and wife as at common law when the period had expired. It will not be presumed that an appeal was ever taken from the divorce decree by either party.

We may say then that the plaintiff and Olin Daniel were never husband and wife under the laws of Alabama, and further that she might even now be carried back to that State and be subject to a prosecution, unless it is barred by limitation, because of her marriage to him within less than sixty days from the date of the decree. She could have married him, however, by express ceremony at any time after the expiration of the sixty-day period. It clearly appears that the marriage bond between her and Powell was completely dissolved, and that she was restrained from marrying again only for the limited time stated in the decree. But there was no marriage by ceremony either in Georgia or Alabama, after the removal of her impediment by the lapse of the prescribed time. They took up habitation in the State of Georgia in the year 1917, and, to give to the defendant the benefit of all evidence that may be contained in the report of the decision in the Vance case, the plain-

tiff and Daniel were not in a state of wedlock until after they came to Georgia. Did they thereafter become husband and wife?

In this State marriage may be consummated as at common law. The relation between them had at no time been meretricious. The impediment in the plaintiff was, in view of her evidence, strictly legal, not moral. She thought she had the right to marry again. Perhaps ignorance on her part of the effect of the decree would not avail her as a defense if she were being prosecuted for bigamy in Alabama on account of the marriage. A person is not permitted to set up ignorance of the law as an exemption from punishment for crime, or from damages for torts, or from liability for the breach of a contract, but knowledge of the law for all intents and purposes will not be imputed to every person. *Ryan* v. *State,* 104 *Ga.* 78, 80 (30 S. E. 678). There is a prima facie presumption that every one knows the law, but there is no conclusive presumption to that effect except in the three instances just stated. Compare *Carter* v. *Walden,* 136 *Ga.* 700 (3) (71 S. E. 1047); *Butler* v. *Livingston,* 15 *Ga.* 565 (1); *Glover* v. *Wright,* 82 *Ga.* 114, 118 (8 S. E. 452); *Rylee* v. *Bank of Statham,* 7 *Ga. App.* 489 (3) (67 S. E. 383); 4 R. C. L. 873, § 17. The rebuttal evidence offered by the plaintiff, including the deed, was certainly sufficient to authorize, if not to demand, the inference of a valid common-law marriage between her and the deceased under the laws of Georgia, regardless of the relation obtaining between them before their removal to this State. It is noted that in the deed she is referred to as the grantor's wife, and the conveyance is based upon the consideration of his love and affection for her as such. She accepted the deed. This is shown prima facie, if not conclusively, by its record and the fact that she had it in her possession, and produced it, at the trial.

Our conclusion then is that no evidence material to the question to be decided (that is, was the inference of a common-law marriage in Georgia authorized?) appears to have been omitted from the bill of exceptions. The evidence which the defendant in error insists was omitted would have been material if common-law marriages were not sanctioned in Georgia, or if our inquiry should be confined to the relation existing between the plaintiff and the decedent while they remained in Alabama. The omitted evidence might possibly be material if we were called upon to determine the question as to whether a finding for the plaintiff would have been

demanded on the issue upon which the adverse ruling was made.

From what we have said above, it follows that the first ground of the motion to dismiss the bill of exceptions is also without merit, and that the court committed error in directing the verdict in favor of the defendant. *Smith* v. *Reed,* 145 *Ga.* 724 (1) (89 S. E. 185 ; L. R. A. 1917A, 492) ; *Powers* v. *Powers,* 138 *Ga.* 65 (1) (74 S. E. 759) ; *Park* v. *Barron,* 20 *Ga.* 702 (65 Am. Dec. 641).

Before concluding, we must confess to have stealthily examined the Alabama decision in the Vance case as contained in a volume like that described in the bill of exceptions. As individuals and lawyers we know what it says of the Alabama law. In fact, the writer has a report of the decision before his very eyes at this moment. But since it is not properly brought up in the record as evidence of a fact, we must as judges remain ignorant of whatever it may prove. We can not use it, as we might in examining the decisions of other jurisdictions as persuasive authority upon some law question to be decided. But as stated above, whatever may be the law of Alabama determining the relation of the parties in that State, it conclusively appears that at the time of their removal to Georgia, the period of restraint upon the plaintiff's right to marry had expired, and their status thereafter should be determined by the laws of this State and not the laws of Alabama. *Hancock* v. *McNatt,* 116 *Ga.* 297 (42 S. E. 525) ; *Roberts* v. *City of Cairo,* supra; *Champion* v. *Wilson,* 64 *Ga.* 184 (1) ; *Craven* v. *Bates,* 96 *Ga.* 78, 80 (23 S. E. 202) ; 18 R. C. L. 388, § 9.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*